USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/26/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE LLEWELLYN,

                    Plaintiff,

-against-

ASSET ACCEPTANCE, LLC and
MONARCH RECOVERY MANAGEMENT, INC.,

                    Defendants.

No. 14-cv-411 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Nicole Llewellyn asserts claims against Defendants Asset Acceptance, LLC ("Asset") and Monarch Recovery Management, Inc. ("Monarch") (collectively, "Defendants") arising out of the Defendants' attempt to collect a purported credit card debt incurred by Plaintiff. Plaintiff's Amended Complaint ("AC") alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), New York General Business Law § 349 ("GBL § 349"), New York's civil and criminal usury laws, and various state law torts.

Before the Court is Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment. For the following reasons, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff opened a credit card account with The Home Depot in 2004 (the "Credit Card"). (AC ¶ 8.) The Credit Card was purportedly issued by Citibank, N.A. ("Citibank"), though Plaintiff disputes this contention. (Plaintiff's Responses to Defendants['] Statement of Facts, ("Pl.'s 56.1 Reply") ¶ 1; Pl.'s Opp. 2-3.) In September 2010, Plaintiff charged items to her

Credit Card related to home repairs she was undertaking. (Affidavit in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Aff.") ¶ 4, Docket No. 47; Statement of Material Facts Plaintiff Contends are not in Dispute Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1") ¶ 4.) Plaintiff defaulted on her Credit Card payments related to these purchases in March 2012. (Pl.'s Aff. ¶ 4.) Following Plaintiff's default, Citibank purportedly charged off Plaintiff's account for lack of payment. (AC ¶ 8; Defendants' Local Rule 56.1 Statement of Material Facts ("Def.'s 56.1") ¶¶ 4-5.)

What occurred next is subject to dispute and forms the foundation of this action. Defendants assert that following the charge off, Citibank sold Plaintiff's debt to Asset. (Def.'s 56.1 ¶¶ 5-9.) The transaction was purportedly memorialized in a purchase agreement and bill of sale between Citibank and Asset. (Affidavit of Elizabeth MacLean ("Asset Aff."), Exs. A-B, Docket Nos. 61, 64, 68.) Plaintiff contends that Citibank "played no meaningful role" in her debt, never extended her credit, and therefore never owned her debt and could not have sold it to Asset. (Pl.'s 56.1 ¶ 16; Pl.'s Opp. at 2-3.)

At some point thereafter, Asset retained Monarch to collect Plaintiff's debt. Monarch sent Plaintiff at least two letters attempting to collect the debt, but Plaintiff purportedly disputed the debt's validity. (Pl.'s 56.1 ¶¶ 9-13.) The parties disagree as to whether Defendants were required to respond to Plaintiff's purported validation requests and whether Defendants provided sufficient evidence to prove ownership of the debt. (*See* Opposition to Plaintiff's Local Rule 56.1 Statement of Material Facts ("Def.'s Opp. to Pl.'s 56.1") at ¶¶ 11-17.) Monarch also attempted to collect the debt from Plaintiff's husband. (Pl.'s 56.1 ¶ 44.)

Plaintiff also disputed the validity of the debt with three consumer reporting agencies to which the debt was reported – TransUnion, Equifax, and Experian. (Pl.'s 56.1 ¶¶ 18-21, 28-31,

35-40.) Each of the agencies purportedly sent the disputes to Asset, which verified that the account was valid and belonged to Plaintiff, though Plaintiff disputes the results of the agencies' respective investigations. (*Id.* at ¶¶ 20-21, 29-31, 36-40.)

As a result of the foregoing, Plaintiff initiated the instant action against Asset and Monarch.

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh

the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).  Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

The Court must "extend extra consideration to a *pro se* plaintiff who is to be given 'special latitude on summary judgment motions.'" *Gabai v. Jacoby*, 800 F. Supp. 1149, 1153 (S.D.N.Y. 1992) (quoting *McDonald v. Doe*, 650 F. Supp. 858, 861 (S.D.N.Y. 1986)), and "[t]he papers of a party proceeding pro se should be read liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Lombardo v. Stone*, 99 Cv. 4603, 2001 WL 940559, at *5

(S.D.N.Y. Aug. 20, 2001) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). Even a *pro se* plaintiff, however, "cannot defeat a motion for summary judgment by relying merely on the allegations of a complaint." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 177 (S.D.N.Y. 2009). "[W]hen confronted with evidence of facts that would support summary judgment, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *Id.*

## DISCUSSION

**I.      Asset's Ownership Of Plaintiff's Debt**

Plaintiff's claims in this action are premised primarily on the notion that Asset does not own Plaintiff's debt and therefore its subsequent actions taken to collect the debt violated a number of federal and state laws. Thus, at the outset, the Court needs to determine whether Asset owns Plaintiff's debt, and if so, whether the debt remains valid, due and owing to Asset.

*A.      Asset Purchased Plaintiff's Debt From Citibank*

It is undisputed that Plaintiff opened a credit card account with The Home Depot in 2004 (AC ¶ 8.) Defendants contend the Credit Card was issued by Citibank. Plaintiff disputes this, arguing throughout her motion papers that Citibank had absolutely nothing to do with her Credit Card. (*See*, *e.g.*, Pl.'s Opp. at 2-3.) Despite Plaintiff's contentions, Plaintiff's own exhibits attached to her motion for summary judgment belie this argument. For example, Exhibit A, which Plaintiff asserts is her "final Home Depot credit card billing statement," (Pl.'s Mot. at 2), unambiguously states that "[t]his Account is Issued by Citibank, N.A." (Pl.'s Mot., Ex. A.) Plaintiff's only proffered evidence to the contrary is that the same billing statement directs payments to "HOME DEPOT CREDIT SERVICES" and "Notice of Billing Errors and Customer

5

Service Inquiries to[] HOME DEPOT CREDIT SERVICES."[1] (*Id.*; Pl.'s Opp. at 2-3.) Neither of these statements is inconsistent with Citibank issuing Plaintiff's Credit Card. Thus, Plaintiff fails to raise a genuine dispute of fact as to whether the Credit Card was issued by Citibank, and the Court therefore finds that Citibank is the original owner of Plaintiff's account.

It is also undisputed that in September 2010, Plaintiff charged items to her Credit Card related to home repairs she was undertaking. (Pl.'s Aff. ¶ 4.) Plaintiff concedes that she defaulted on her Credit Card payments related to these purchases in March 2012. (*Id.*)

Thus, in March 2012, Citibank purportedly charged off Plaintiff's account for lack of payment. (AC ¶ 8; Def.'s 56.1 ¶¶ 4-5.) Defendants assert that following the charge off, Citibank sold Plaintiff's debt to Asset. (Def.'s 56.1 ¶¶ 5-9.) The transaction was purportedly memorialized in a purchase agreement and bill of sale between Citibank and Asset. (Asset Aff., Exs. A-B.) Plaintiff counters that Asset does not own her debt because certain Securities and Exchange Commission ("SEC") filings state that all Citibank credit card receivables are sold to Citibank Credit Card Master Trust I (the "Citibank Trust"). (Pl.'s Mot. at 5.) Thus, the Citibank Trust, not Asset, is the true owner of Plaintiff's debt.

A review of the evidence proffered by both parties makes clear that Asset, not the Citibank Trust, owns Plaintiff's debt. First, Defendants proffer an agreement, dated November 20, 2012, memorializing the sale of Citibank's charged off Home Depot accounts to Asset. (Asset Aff., Ex. A ¶¶ 1.2, 2.1.) Further, Defendants also proffer the Bill of Sale and Assignment, dated January 18, 2013, by which Plaintiff's account was transferred to Asset. (*Id.*, Ex. B.) By Affidavit, Asset asserts that information related to the purchased accounts, including Plaintiff's, was transferred via an electronic file. (Asset Aff., ¶¶ 6-7.) This is consistent with the Bill of

---

[1] Plaintiff appears to inadvertently refer to "Home Depot Card Services," rather than "Home Depot Credit Services" in her motion papers. The latter is referenced in Exhibit A to the Amended Complaint.

Sale and Assignment, which notes that the purchased accounts were "described in Exhibit 1 and the *final electronic file*." (*Id.*, Ex. B) (emphasis added.)  Finally, Defendants proffer a printed copy of the information contained in the electronic file relating to Plaintiff's account, (*Id.*, Ex. C), which matches Plaintiff's Credit Card account number, balance due, and personal information contained on Plaintiff's proffered final Credit Card statement. (*Compare* Asset Aff., Ex. C *with* Pl.'s Mot., Ex. A.)

   Plaintiff attempts to counter this evidence by citing to a Form 8-K and a Prospectus Supplement filed with the SEC on behalf of the Citibank Trust. (Pl.'s Mot., Exs. HH, II.)  These filings are dated August 9, 2011 and December 17, 2009, respectively.  Thus, as Defendants correctly note, these filings predate the sale of Plaintiff's debt to Asset and are of little evidentiary value in this case.  Nevertheless, even a cursory review of the SEC filings, and the pages specifically cited by Plaintiff, reveals that Citibank does not "sell all its credit card receivables accounts to Citibank Credit Card Master Trust I in exchange for payment from the trust." (Pl.'s Mot. at 5.)  Instead, the 2009 SEC filing proffered by Plaintiff notes that "Citibank Credit Card Master Trust I is a New York common law trust formed by Citibank (South Dakota) and Citibank (Nevada) in May 1991 to securitize *a portion of their portfolios of credit card receivables*." (Pl.'s Mot., Ex. II at 108) (emphasis added.)  Plaintiff has proffered no evidence that her Credit Card account was ever sold to the Citibank Trust as part of the portion of credit card receivables Citibank securitizes, and in fact all of the record evidence flatly contradicts this notion.  Plaintiff's remaining arguments concerning the validity of the affidavits proffered by Defendants, (*see* Pl.'s Opp. at 6-11), including that they contain hearsay and conclusions of law, are without merit.

Accordingly, the Court finds that Asset purchased Plaintiff's debt from Citibank, at which time it became the owner of Plaintiff's debt.

### B. Plaintiff's Debt Is Valid

Plaintiff also contends that even if Citibank previously owned her debt, it should be void and unenforceable because Citibank applied an interest rate of 25.99% per annum, in excess of New York's civil and criminal usury laws, which cap interest rates at 16% and 25%, respectively. (*See* Pl.'s Mot. at 2-7.) Notwithstanding that Citibank is not a party to this action and that Defendants did not charge Plaintiff interest in excess of the statutory rates, Plaintiff's argument is unavailing.

Citibank is a national bank, and as such, is governed by the National Banking Act. The Act "expressly permits national banks to 'charge on any loan . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located.'" *Madden v. Midland Funding, LLC*, 786 F.3d 246, 250 (2d Cir. 2015) (citing 12 U.S.C. § 85). The Act also "'provide[s] the exclusive cause of action' for usury claims against national banks, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003), and 'therefore completely preempt[s] analogous state-law usury claims,' *Sullivan v. Am. Airlines, Inc.,* 424 F.3d 267, 275 (2d Cir. 2005)." *Id.* "Thus, there is 'no such thing as a state-law claim of usury against a national bank.'" *Id.* (quoting *Beneficial Nat'l Bank,* 539 U.S. at 11).

Plaintiff does not contest Citibank's status as a national bank, thus conceding that it would not be subject to New York's usury laws, but argues that its failure to conduct nonministerial actions regarding her account in South Dakota, Citibank's "home state," requires application of New York usury laws to her debt. Plaintiff cites to three cases in support of this proposition, arguing that "well-settled case law establishes it is not enough for a credit card issuer to allege its status as a national bank." (Pl.'s Mot. at 4) (citing *Citibank (SD) N.A. v.*

8

*Hansen*, 28 Misc. 3d 195 (Dist. Ct. Nassau Cnty. 2010); *Citibank (SD), N.A. v. Martin*, 11 Misc. 3d 219 (Civ. Ct. N.Y. Cnty. 2005); *Discover Bank v. John Robert Alba*, cv-1118-11 (Yonkers Cnty Ct. 2013).[2]  The cases cited by Plaintiff are inapposite.  First, Plaintiff confuses the posture of the parties in this case – each of the cited cases deals with a purported national bank seeking summary judgment *as a plaintiff* to recover a consumer's unpaid credit card debt.  Here, Citibank is not a party to this action, let alone trying to collect a debt.  Second, the cited cases stand for the proposition that in order for a national bank *to collect interest in excess of New York's usury limits*, "the bank must demonstrate . . . that at least one significant nonministerial action associated with the account took place in the bank's 'home state.'"  *Hansen*, 28 Misc. 3d at 196.  Even though the plaintiff banks in those matters failed to proffer sufficient evidence to apply their "home state" usury limits rather than New York's, the courts did not invalidate the underlying debts, but instead applied interest rates at New York's statutorily prescribed level.  *See*, *e.g.*, *id.* at *198.  Thus, notwithstanding the fact that no party in this case is attempting to collect interest from Plaintiff in excess of New York's usury laws, and even construing all inferences in Plaintiff's favor, this Court could not declare Plaintiff's debt void and unenforceable on the basis of Citibank, or any party for that matter, charging interest in excess of New York's usury laws.

Plaintiff's remaining arguments related to the application of New York's usury laws are based on the Citibank Trust's ownership of Plaintiff's debt.  As the Court has already decided that the Citibank Trust does not own Plaintiff's debt, these arguments are unavailing.  Accordingly, Plaintiff's debt is valid, due and owing.

---

[2] *Alba* does not appear to be available via any electronic database accessible to the Court – i.e., LexisNexis or Westlaw – and neither party provided the Court with a copy of the decision.  Nevertheless, the Court located a copy of the decision at http://www.peskalaw.com/yahoo_site_admin/assets/docs/decision41013.142143111.pdf (last visited October 23, 2015).

## II.     Plaintiff's FDCPA Claim

Plaintiff's first claim for relief alleges a host of violations of the FDCPA arising out of Defendants attempt to collect a purportedly disputed, unverified, invalid, and unenforceable debt that was "not authorized by any agreement . . . or permitted by law." (AC ¶ 32; *see generally* AC ¶¶ 31-38.) Plaintiff also alleges that: (1) Monarch's collection notices were "material[ly] false, deceptive, and misleading" because they represented that Asset was Plaintiff's "creditor," (AC ¶ 34); (2) Asset's communications to consumer reporting agencies asserting its ownership of the debt were false and inaccurate, (AC ¶ 36); (3) Defendants failed to comply with Plaintiff's validation request, (AC ¶¶ 37-38; Pl.'s Mot. 12-13); and (4) Defendants improperly added interest to Plaintiff's debt. (Pl.'s Mot. at 11-12.)

The FDCPA was enacted to curb "the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). The Act proscribes, among other things, conduct that "harass[es], oppress[es], or abuse[s] any person in connection with the collection of a debt," 15 U.S.C. § 1692d, or that consists of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Act also permits consumers to dispute a debt and seek verification of the validity of the debt, as long as the consumer notifies the debt collector in writing within thirty days of receiving written notice of the debt. 15 U.S.C. § 1692g(b). "The thirty-day window is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and continue collection activity." *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008).

The majority of Plaintiff's alleged FDCPA violations are based on Asset's purported lack of ownership of Plaintiff's debt. The Court has already decided that Asset owns the debt and that it remains valid, due and owing. Thus, Plaintiff's claims brought pursuant to 15 U.S.C. §§

10

1692d, 1692e, and 1692f that are based on the fact that the underlying debt was invalid and that Asset was not Plaintiff's "creditor" are dismissed. (*See* AC ¶¶ 32-36.) Plaintiff's only remaining allegations under the FDCPA are that Defendants failed to comply with Plaintiff's validation request and that Defendants improperly added interest to Plaintiff's debt.

With respect to the first of the remaining allegations, Plaintiff received the initial collection letter from Monarch on January 24, 2013. (*See* Declaration of R. David Lane, Esq., Pl.'s Deposition Testimony at 31:11-25; Pl.'s Mot., Ex. B.) Plaintiff requested validation of her debt by letter to Monarch on April 11, 2013. (Pl.'s Mot. at 12.) There is no question that Plaintiff requested validation long after the expiration of the thirty day statutory period set forth in 15 U.S.C. § 1692g. Thus, Defendants were not required to validate Plaintiff's account.

Plaintiff's final allegation is also without merit. Plaintiff asserts that Monarch "intentionally added interest to the underlying debt . . . without putting forth any agreement creating the debt or permitted by law." (Pl.'s Mot. at 11.) Asset asserts that it charged Plaintiff nine percent interest on her outstanding debt, in accordance with New York law, and Monarch charged Plaintiff no interest at all. (Pl.'s 56.1 Reply ¶¶ 16, 17[3]; Asset Aff. ¶ 10; Def.'s Mot. at 14.) The Court is not aware of, and Plaintiff does not cite to, any authority that prohibits Asset from charging Plaintiff nine percent interest on an outstanding credit card debt.

Accordingly, Defendants are granted summary judgment on Plaintiff's FDCPA claim.

## III. Plaintiff's FCRA Claim

Plaintiff asserts claims for violations of the FCRA pursuant to 15 U.S.C. §§ 1681s-2(a) and (b). It is well-settled, however, that § 1681s-2(a) does not provide a private cause of action.

---

[3] Although Plaintiff disputes that "Monarch charged no interest on the debt at all," she disputes it only inasmuch as Monarch purportedly "attempted to collect an amount that included usurious interest." (Pl.'s 56.1 Reply ¶ 17.) Plaintiff does not specifically dispute or cite to any evidence showing that Monarch charged Plaintiff interest.

*See Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (finding no private cause of action and collecting cases from other circuits). Thus, Plaintiff's § 1681s-2(a) claim is dismissed and the Court need only assess Plaintiff's claim for a violation of § 1681s-2(b).

Section 1681s-2(b) sets forth the duties of a furnisher of information to consumer reporting agencies upon receiving notice of a consumer's dispute. Among other things, it requires the furnisher of information to conduct an investigation into the disputed information, review all information provided by the consumer reporting agency, and report the results of the investigation to the agency. 15 U.S.C. § 1681s-2(b)(1)(A)-(C). In the event the investigation finds the information furnished is incomplete or inaccurate, the furnisher must report its findings to all consumer reporting agencies to which it furnished the information. 15 U.S.C. § 1681s-2(b)(1)(D). Although the Second Circuit has not determined the standard governing review of the adequacy of such an investigation, "other circuits and district courts have construed the phrase as assuming a reasonableness standard." *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010).

Plaintiff asserts that Asset "neglected to conduct a proper investigation, verified the account and continued to furnish the false and inaccurate information related to the Plaintiff." (AC ¶¶ 47-52; *see also* Pl.'s Mot. at 19-20.) Defendants contend that upon receiving notice of Plaintiff's dispute, Asset reviewed its records and those provided by Citibank. (Asset Aff. ¶ 11; Def.'s Mot. at 17-18.) Following this investigation, Asset concluded that the debt belonged to Plaintiff – Plaintiff's name, address, social security number, and account information matched the information provided to the consumer reporting agencies, and the account revealed that Plaintiff had incurred the debt on a Home Depot credit card issued by Citibank. (Asset Aff. ¶ 12.) Upon receipt of Plaintiff's dispute, Asset marked the account or "tradeline" as "disputed by

the consumer." (*Id*.) And, notwithstanding the results of its investigation confirming the validity of Plaintiff's debt, Asset deleted the account from Plaintiff's credit report. (*Id.* ¶ 13.)

The core of Plaintiff's argument is, once again, that Asset does not own her debt and that the debt is invalid, such that any investigation conducted by Asset resulting in the verification of the validity of the debt must have been improper and unreasonable. The Court has already held that Asset owns Plaintiff's debt and that it remains valid. Any contention that the information reported to the consumer reporting agencies was false or inaccurate is without merit. In any event, Asset's investigation was reasonable, as it reviewed all of its records pertaining to the account, as well as those provided by Citibank, in order to confirm that the information Asset was reporting to the consumer reporting agencies matched its internal records.

Accordingly, the Court finds a grant of summary judgment in favor of Defendants is appropriate.

## IV. Plaintiff's New York GBL § 349 Claim

Next, Plaintiff alleges violations of N.Y. General Business Law § 349. Section 349 is "directed at wrongs against the consuming public," *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995), and was enacted to protect consumers from sellers' deceptive practices. *Id.* at 25. In order to assert a *prima facie* case under GBL § 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego*, 85 N.Y.2d at 25). Nevertheless, a plaintiff is not required to "show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large."

*Oswego*, 85 N.Y.2d at 25. "Private contract disputes, unique to the parties" and "single shot transaction[s]" fall outside of the statute. *Id.* at 25-26 (internal citation omitted).

Plaintiff generally alleges that the debt collection business is directed at consumers, (AC ¶ 57), and further asserts that the alleged harm "could have a broader impact on consumers at large" because "the Defendants directed their deceptive tactics towards Plaintiff's husband." (Pl.'s Mot. at 25.) Plaintiff has neither alleged nor argued that Asset's conduct affected any other consumers besides her husband. Nor has she "demonstrate[d] that the acts or practices have a broader impact on consumers at large," *Oswego*, 85 N.Y.2d at 25, by anything more than conclusory statements. Plaintiff's failure to present any evidence that Asset's actions impacted consumers at large requires dismissal of her GBL § 349 claim.

## V. The Interest Rate Charged Was Not Usurious

Plaintiff alleges that "[i]n the course of attempting to collect a debt from the Plaintiff, [Defendants] charged interest in excess of 16% via written communication and credit reporting" in violation of New York's civil usury statute, codified at N.Y. Gen. Oblig. Law § 5-501 and N.Y. Banking Law § 14-a. (AC ¶ 86.) Section 14-a of the N.Y. Banking Law sets the maximum rate of interest under N.Y. Gen. Oblig. Law § 5-501 at sixteen percent per year. N.Y. Banking Law § 14-a(1).

Notwithstanding the fact that New York's usury laws do not apply to "defaulted obligations" or "interest . . . charged only on . . . past due debts," *Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61, 63 n.3 (2d Cir. 1986) (internal citations omitted), which would encompass Plaintiff's debt, Plaintiff concedes that Asset only charged her nine percent interest, (Pl.'s 56.1 Reply ¶ 16), and that Monarch charged her no interest at all. (*Id.* ¶ 17.)

Thus, even if Plaintiff's claim was actionable, the interest charged on her account by Defendants was below the sixteen percent limit and not usurious. Accordingly, Plaintiff's claim is dismissed.[4]

## VI.   Plaintiff's Remaining Claims

Plaintiff's remaining claims for negligence, intentional infliction of emotional distress, and defamation are based upon Asset's purported lack of ownership of Plaintiff's debt and its attempt to collect a purportedly usurious debt. Plaintiff alleges that the Defendants' attempt to collect the debt and their reporting of the debt to the consumer reporting agencies was negligent, caused her emotional distress, and defamed her. The Court has already decided that Asset owns the debt, that it remains valid, due and owing, and that the interest charged by Defendants is not usurious. Because Defendants' actions to collect the debt were reasonable, violated no duty of care owed to Plaintiff, and did not defame her in any way, Plaintiff's remaining claims are dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 46 and 50, and to close the case.

Dated:   October 26, 2015
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[4] Plaintiff's claim for a violation of the criminal usury law was dismissed above, as there is no private right of action for such a violation in New York.